OPINION OF THE COURT
Duncan S. McNab, J.
Petitioner was sentenced on September 8, 1972 to an indeterminate prison term with a four-year maximum upon his conviction for robbery in the third degree (Penal Law, § 160.05). Petitioner was conditionally released on January 8, 1974 and declared delinquent as of October 2, 1974. A warrant was filed against petitioner on April 25, 1978, and on April 27, 1978, petitioner waived a preliminary hearing. By way of a prior writ filed July 28, 1978, petitioner alleged that he had been denied a timely final revocation hearing. On September 1, 1978, Judge George Burchell, Supreme Court, Westchester County, while dismissing the writ, ordered respondent to afford petitioner his final hearing within 15 days of that decision (although, contrary to petitioner’s assertion, it did not further require that a "determination” also be made within that 15-day period). As respondent notes, petitioner received his final hearing before a hearing officer on September 12, 1978, within the period provided under J. Burchell’s order of September 1, 1978. However, as of the return day of the instant application, October 16, 1978, petitioner had still not been notified of the Parole Board’s decision. Respondent indicates that the recommendations and findings of the hearing officer were submitted to the board on October 13, 1978 and represents that petitioner will be notified of the board’s decision by the end of the week of Friday, October 20, 1978.
 The sole issue before the court at this time then is whether petitioner has been denied due process in light of respondent’s failure to have as yet decided petitioner’s case some five weeks after the final hearing was held. At the outset, it must be borne in mind that this particular final hearing, upon the representation of respondent, was conducted by a hearing officer. Accordingly, the court feels a proper resolution of the issue must begin with an examination of section 259-i (subd 3, par [f], cl [x]) of the Executive Law, which provides as follows: "If the presiding officer is satisfied that there is a preponderance of evidence that the alleged violator violated one or more conditions of release in an *778 important respect, he shall so find. When the presiding officer is a board member, he may (A) direct the violator’s reincarceration and fix a date for consideration by the board for re-release on parole or conditional release, as the case may be; or (B) direct that the parolee or conditional releasee be restored to supervision. If the violator is restored to supervision, the board member may impose such other conditions of parole or conditional release as he may deem appropriate. When the presiding officer is a hearing officer, he may recommend to the board the dispositions in clauses (A) and (B).”
Thus, it is apparent on the face of this statute that the hearing officer, unlike a board member, does not have the authority to make the final decision, but only to conduct and preside over the final hearing and make written reports and recommendations to the board. See section 259-d of the Executive Law and 9 NYCRR 8005.20 (f), effective March 23, 1978, requiring the hearing officer to submit a written finding and recommendation to the board "as soon as practicable” following the hearing. Thus, the court cannot overlook the fact then when an alleged violator, by pure happenstance, appears before a hearing officer, as opposed to a board member, the "final” hearing is no longer truly final, but merely the first step of the bifurcated procedure promulgated in section 259-i (subd 3, par [f], cl [x]) of the Executive Law.
At the outset, the court wishes to make it clear that it is not suggesting that such a bifurcated procedure is impermissible per se. The court would respectfully disagree with the decision in People ex rel. Diaz v Superintendent (90 Misc 2d 1000) wherein Judge Joseph Jiudice held that the board, then acting pursuant to 7 NYCRR 1925.35 could not bifurcate the final revocation hearing. First, it should be noted that while the parole regulations in effect at the time of Diaz (supra) called for final hearings to be held before a three-member panel of the board, one of whose members would be designated the hearing officer (see 7 NYCRR 1925.20 [b] [1]) as opposed to the present practice under section 259-d of the Executive Law permitting the board chairman to appoint a nonboard member as a hearing officer to conduct hearings and make recommendations to the board, even those former regulations, at 7 NYCRR 1925.35 (1), provided that the alleged violator be advised of the hearing determination "[a]s soon as practicable after the violation hearing” (emphasis added), much like present 9 NYCRR 8005.20 (f). Moreover, and again *779 contrary to the opinion of the court in Diaz (supra) this court does not extract from the seminal case of Morrissey v Brewer (408 US 471) any language which either expressly or impliedly equates the term final hearing with complete hearing, nor does Morrissey (supra) either expressly or impliedly prohibit a bifurcated procedure such as is contained in section 259-i of the Executive Law. Rather, the Morrissey court largely confined itself to a discussion of what minimal requirements of substantive due process an alleged violator is entitled to, and consistent with that, specifically left to each State the task of writing their own respective code of procedure.
Moving beyond that threshold issue, then, the court would next look to the legislative and gubernatorial purpose underlying section 259 of the Executive Law (L 1977, ch 904) in, inter alia, seeking to relieve the enormous burdens placed on board members by authorizing a nonboard member hearing officer to conduct hearings and make recommendations to the board. (Legislative Findings and Purpose, McKinney’s Cons Laws of NY, Book 18, Pocketpart, Executive Law, § 259, p 90; NY Legis Ann, 1977, p 319.) This court recognizes the need for providing more manpower to the Parole Board to assist them in reforming and enhancing the over-all operation of the parole process, as envisioned by those who drafted section 259 of the Executive Law. Such efforts are certainly to be commended. However, this court is of the opinion that the services of those designated as hearing officers must be utilized in a manner consistent with that over-all reform effort, and specifically within the mandate of section 259-i (subd 3, par [f], cl [i]) of the Executive Law that final hearings shall be held within 90 days of the probable cause determination. The delay ensuing from the twin circumstance of holding the final hearing at the tailend of that period, (or as occurred here, more than a month after the 90-day period had expired), and then keeping the alleged violator incarcerated for yet another month or more while the hearing officer’s findings are being reviewed for the ultimate decision, simply does not comply with either the letter or spirit of this recent legislative enactment.
Thus, assuming arguendo that such a bifurcated procedure may, as applied, satisfy equal protection and due process requirements, the court would strongly urge that in cases where hearing officers are to be utilized, the board scheduled the alleged violator’s hearing early enough in the 90-day period to allow for a final decision to be in the relator’s hand *780 before that period runs out. Moreover, the court would agree with the dicta of Judge Gerard Delaney contained in People ex rel. Riley v Board (Supreme Ct, Westchester County, Aug. 30, 1978) to the effect that since it has now been more than one year since the enactment of article 12-B of the Executive Law and since specific implementation of sections 1-17 was delayed until January 1, 1978 to prepare for an orderly transfer of functions from the Department of Correctional Services, the board should by now have had enough time to set up some administrative mechanism to comply with the time periods mandated under section 259 of the Executive Law.
Hence, the court finds the procedures employed herein circumvented not only the clear intent of Judge Burchell’s order of September 1, 1978, but also the legislative purposes underlying the enactment of section 259 of the Executive Law. Accordingly, petitioner’s application is granted, the writ is sustained, and respondent is directed to restore petitioner to parole forthwith upon receipt of this decision and order.